UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELL PULLETT,<br><br>   Plaintiff,<br><br>vs.<br><br>J. CASTELLANOS, *et al.*,<br><br>   Defendants. | Case No. 1:15-cv-00755-RRB<br><br>**DISMISSAL ORDER** |

Pending before the Court is the First Amended Complaint filed by Plaintiff Dell Pullett, a California state prisoner appearing *pro se* and *in forma pauperis*, under 42 U.S.C. § 1983 against various officials of the California Department of Corrections and Rehabilitation.[1] Pullett's Amended Complaint arises out of his incarceration at the California Substance Abuse and Treatment Facility, Corcoran ("CSATF"). Pullett is currently incarcerated at the R. J. Donovan Correctional Center, San Diego.

/////

/////

---

[1] In his Amended Complaint Pullet names as Defendants: J. Castellanos, Correctional Officer; J. Jasso, Office Assistant; R. Hall, Appeals Coordinator; J. Cota, Appeals Coordinator; Ramos, Appeals Corcoran; and Does 1–20.
 In his original Complaint, in addition to J. Castellanos, Pullett named as Defendants: P. Brightwell, Correctional Counselor; H. Homan, Correctional Counselor; J. Keuhn, Correctional Counselor; M. Fisher, Correctional Counselor; J. Sasso, Office Assistant; R. Hall, Appeals Coordinator; C. M. Ramos, Appeals Coordinator, and Does 1–20.

## I.    SCREENING REQUIREMENT

This Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.[2] The Court set forth the standards applicable to screening in its earlier Dismissal Order; therefore, the Court does not repeat them herein.

## II.    GRAVAMEN OF AMENDED COMPLAINT

***First Cause of Action.***  In his first claim for relief Pullett alleges a violation of his rights under the First and Fourteenth Amendment. According to Pullett he was retaliated against starting in September 2009 and continuing until his transfer to the R. J. Donovan facility in October 2013. Although it is not entirely clear, it appears that Pullett's claim is in relation to two separate types. One a series of Rules Violation Reports ("RVRs") that resulted in disciplinary action being taken against him. According to Pullett these RVR's were false and the disciplinary action taken unwarranted. The other, a series of internal grievances, which Pullett appears to contend were improperly denied on procedural grounds. It is not clear from the Complaint the extent to which, or even whether, Pullett is challenging these actions.

***Second Cause of Action***. In his second claim for relief Pullett alleges that Defendants caused indefinite delays in processing his internal grievances arising out the incident underlying his third claim for relief, thereby impeding his access to the courts.

---

[2]  28 U.S.C. § 1915A(a).

***Third Cause of Action.*** In his third claim for relief Pullett alleges a violation of his Eighth Amendment rights in that, while walking unescorted between his cell and the medical department, he was attacked and stabbed by two other inmates.

Pullett requests the Court declare his Constitutional rights were violated, and award compensable and punitive damages, costs of suit, and attorney's fees.

## III.   DISCUSSION

Reduced to its essence, except to the extent that he has named different Defendants, the Amended Complaint repeats the claims asserted in the original Complaint.[3] In dismissing Pullett's original Complaint the Court noted that, except with respect to his Third Cause of Action, it was unlikely that Pullett could truthfully allege that any act or acts by any Defendant violated a constitutionally protected right and resulted in some compensable injury. The Court further noted that, with respect to his Third Cause of Action, the absence of a named responsible official upon which service could be made may render it impossible for Plaintiff to proceed further in pursuing this action.[4]

---

[3] A pleading that has been amended under Rule 15(a) supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified. Once an amended pleading is interposed, the original pleading no longer performs any function in the case. 6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Fed. Prac. & Proc. Civ., § 1476 (2d ed.); *see Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Loux v. Ray*, 375 F.2d 55, 57 (9th Cir. 1967).  Thus, the Court presumes that Pullett has abandoned his claims against P. Brightwell, H. Homan, J. Keuhn, M. Fisher, J. Sasso, R. Hall, and C. M. Ramos.

[4] Docket 9.

DISMISSAL ORDER
*Pullett v. Castellanos*, 1:15-cv-00755-RRB – 3

In dismissing Pullett's Complaint the Court noted that the first hurdle Pullett failed to clear is that to the extent his claims arose prior to May 13, 2011, they were barred by the statute of limitations. In his Amended Complaint Pullett affirmatively alleges that those events are not part of his claims, but merely to show a course of systematic retaliation leading up until he was stabbed. The Court treats those events in that context.

*First Cause of Action*

Denominated a systemic retaliation claim, in this claim (encompassing 16 pages and 72 paragraphs) Pullett refers to the processing of several RVRs and CDCR 602s, at least two transfers between prisons, requests for accommodation modifications (apparently on the basis that Pullett believed he was improperly classified), changes in yard levels, and the processing of his internal grievances. Pullett identifies by name Castelanos, Brightwell, Homan, Kuehn, and Fisher.

It is unclear just what constitutionally protected right Pullett is alleging was infringed. Pullett alleges that at least one of the transfers back to CSATF in 2010, the result of retaliation by Kuehn, Fisher, Homan and Brightwell, constituted a violation of the Eighth Amendment, and his right to Due Process.[5] Pullett also alleges that CO W. W. Williams somehow harassed him for an eight-month period following April 22, 2010. The acts of these individuals occurred well prior to May 2011. Thus, any claim Pullett has as against any of these five is clearly barred by the four-year limitations period.

---

[5] Docket 12, ¶¶ 18 and 19, pp. 12–15.

With respect to Castellanos, Pullett refers to a series of events commencing around January 13, 2011. In particular Pullett refers to an incident that occurred on May 9, 2011, that resulted in a RVR action against Pullett. Pullett attached to his Amended Complaint a copy of the RVR proceeding.[6] As a result, Pullett was assessed the forfeiture of 30 days good time credit.  Under *Heck* an inmate may not seek damages in a § 1983 claim when establishing the basis for the claim necessarily involves demonstrating that the conviction, sentence, or length of incarceration is invalid.[7] Thus, that event does not constitute the basis for any relief in this action.

Pullett also alleges that he filed two CDCR 602 appeals against Castellanos, one on April 17, 2013, and the second on May 6, 2013. Pullett also alleges he saw Castellanos talking quietly to one of the two inmates who stabbed him (Simas) and hand him a brown paper bag. Pullett then alleges:

> " He then started making comments like: " You are working me Pullett. "In other words, what he was also saying was, that he was going to start searching the Black (I/M) cells much more, and cause trouble upon me, and that no-one writes him-up and gets away with it."[8]

Pullet then alleges:

---

[6] Docket 12-1, pp. 151–156.

[7] *See Heck v. Humphrey*, 512 U.S. 477, 486–97 (1994); *see also Edwards v. Balisok*, 520 U.S. 641, 643–47 (1997) (extending the *Heck* rule to § 1983 claims that, if successful, would imply the invalidity of deprivations of good-time credits provided for by prison disciplinary proceedings).

[8] Docket 12, p. 22, ¶ 61.

> 62. Within a week later not truely [*sic*] knowing that I was a "Target" of a (I/M) assult [*sic*], for exposing what (C/O) J. Castellanos had told me about (I/M) Loyd and or I believe for writing-up (C/O) J. Castellanos. (C/O) J. Castellanos had me stabbed bt [*sic*] two White (I/M's), (I/M) Simas, and the other (I/M) I believe was his cellie, which I would get his name later. The second time I was stabbed by the other White ( I/M) was in my right lung. (I/M) Simas must have given the weapon to his cellie, because they were the one's working out together by my cell no. (H/U) D5. Thats [*sic*] who (I/M) Simas had ran to with my wheelchair. This had happen when I was called out of my cell after breakfast.  (I/M) Simas and the other White (I/M), that stabbed me in my right lung were excercising [*sic*] out of their usual place, right next to my cell no. 150, while we were on Lock-Down, at approximately 8:30 A. M.[9]

The Ninth Circuit has defined the parameters of a retaliation claim:

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.[10]

The Ninth Circuit has "also noted that a plaintiff who fails to allege a chilling effect may still state a claim if he has suffered some harm."[11] Moreover, "the mere *threat* of harm can be an

---

[9]   Docket 12, p. 22. The stabbing incident forms the basis for Pullett's Third Cause of Action discussed further below.

[10]   *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote and citations omitted).

[11]   *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citing *Rhodes*, 408 F.3d at 568 n. 11).

adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect."[12] Nor need the threat be explicit or specific.[13]

A prisoner must show some causal connection between the action taken by the state actor and the prisoner's protected conduct. That is, "[t]o prevail on a retaliation claim, a plaintiff must show that his protected conduct was the substantial or motivating factor behind the defendant's conduct."[14] A prisoner need not show that his speech was actually inhibited or suppressed. The appropriate test is whether the adverse action at issue "would chill *or* silence a person of ordinary firmness from future First Amendment activities."[15] Otherwise, a defendant could escape liability merely because a particularly determined prisoner persists in this protected activity.[16]

To state a viable cause of action requires the presentation of factual allegations sufficient to state a plausible claim for relief.[17] The allegations against Castellanos are based upon nothing more than speculation and conjecture. Although at this stage the Court must accept as true the factual allegations of the Complaint, it need not, nor may it, accept purely

---

[12] *Id.* at 1270.

[13] *Id.*

[14] *Id.* at 1271 (internal quotation marks and citation omitted).

[15] *Id.* (internal quotation marks and citation omitted).

[16] *Id.*

[17] *Ascroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *see Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting and applying *Iqbal* and *Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007)).

conclusory allegations.[18] Particularly where, as here, the allegation is not only speculative and conjecture, but inherently improbable.

The balance of the allegations in the First Cause of Action appear to relate to Pullett's attempts to exhaust his administrative remedies with respect to the stabbing incident. Because exhaustion is an affirmative defense to be raised and proven by the Defendants,[19] the Court need not, nor does it, reach that issue at this stage of the proceedings.

The First Cause of Action fails to state facts sufficient to warrant the granting of any relief. Furthermore, it does not appear that Pullett can truthfully plead any plausible set of facts that would entitle him to relief. Therefore, it will be dismissed in its entirely without leave to amend.[20]

### Second Cause of Action

In his second claim, asserting a denial his right of redress in violation of his First Amendment and Fourteenth Amendment Due Process and Equal Protection rights under (encompassing some 11 pages and 58 paragraphs), Pullett refers primarily to his unsuccessful efforts to exhaust his administrative remedies after May 11, 2011, in connection with the stabbing incident underlying his Third Cause of Action. In that cause of action he

---

[18] *Iqbal* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

[19] *Jones v. Bock*, 549 U.S. 199, 212–17 (2007); *Albino*, 747 F3d 1162, 1166, 1168 (9th Cir. 2014).

[20] *See Hartman v. California Dept. of Corr. and Rehab.*, 707 F.3d 1141, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile."); *Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc) (explaining that leave to amend should be given unless amendment would be futile).

identifies: J. Jasso (Office Assistant); Associate Warden R. Tolson; J. Kuehn (CC-I); M. Fisher (CC-II); R. Hall (Appeals Coordinator); J. Cota (Appeals Coordinator); J. Ramirez (Appeals Coordinator); and C. M. Ramos (Appeals Coordinator). Although Pullett also describes the stabbing incident in some 15 paragraphs,[21] it is in reference to the basis underlying his internal administrative appeals and does not appear to form the basis for any independent form of relief from any Defendant, named or unnamed.

Insofar as Pullett's Due Process rights are concerned, his allegations fall far short. In the context of grievances, prisoners have no right to a particular procedure.[22] California provides an adequate grievance procedure,[23] which was followed in this case.

Other than to serve as a basis for excusing Pullett from the requirement that he exhaust his administrative remedies with respect to his Third Claim for Relief, the allegations in the Second Cause of Action as presently pleaded do not entitle Pullett to any additional relief in this proceeding. Accordingly, the Second Claim for Relief will also be dismissed without leave to amend as to the Defendants named therein. In further amending his

---

[21] Docket 12, pp. 27–29.

[22] *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); see *Hewitt v. Helms*, 459 U.S. 460, 472 (1983) (receded from in other part by *Sandin v. Connor*, 515 U.S. 472, 481–84 (1995)) (discussing the flexible approach to due process requirements in the prison context).

[23] Cal. Code Regs. tit. 15, § 3084.1(b) ("Unless otherwise stated in these regulations, all appeals are subject to a third level of review, as described in section 3084.7, before administrative remedies are deemed exhausted. All lower level reviews are subject to modification at the third level of review."). Section 3084.7 provides for three levels of review, the third level conducted by the Secretary of the California Department of Corrections and Rehabilitation, or by a designated representative. *See Brown v. Valoff*, 422 F.3d 926, 929–30 (9th Cir. 2005)

Complaint, while Pullett should plead the facts relating to his attempts to exhaust his administrative remedies with respect to the incident occurring on May 11, 2011, he need not, nor should he, include any other claim for relief.

### *Third Cause of Action*

Pullett's third claim arises out an incident in which he was stabbed by two other inmates. Reading the Amended Complaint as a whole, the Third Cause of Action is predicated at least in part upon a theory that Castellanos had set him up to be stabbed for writing grievances and in part on a failure to protect claim as against two Doe Defendants. The problem with the third claim as pleaded is two-fold. First, Pullett names only two John Doe Defendants as allegedly failing to protect him from harm. Second, his entire claim is based upon supposition and innuendo. The Court will address these *in seriatim.*

As a general rule, the use of "John Doe" to identify a defendant is not favored.[24] "[W]here the identity of alleged defendants will not be known prior to the filing of the complaint[,] . . . the plaintiff should be given an opportunity through discovery to identify the unknown defendants."[25] Dismissal for failure to identify unnamed defendants is appropriate only if "it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds."[26]

---

[24] *See Wiltsie v. Calif. Dept. of Corr.*, 406 F.2d 515, 518 (9th Cir. 1968).

[25] *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

[26] *Id.*

In this case, *if* Pullett can properly plead a viable claim against Castellanos, he may be able to ascertain the identity of the Doe defendants through the discovery process. On the other hand, in the event that Pullett is unable to properly plead a viable cause of action against Castellanos, there will be no defendant upon which the complaint may be served. In that case, there is no avenue through which Pullett can ascertain the identities of the Doe defendants and his Complaint must be dismissed. Liberally construing the allegations it appears that Pullett is contending that Castellanos was instrumental in engineering the attack on him, or conspired with the Doe Defendants to "look-the-other-way" during the attack.

The second defect may ultimately prove fatal to Pullett's Third Cause of Action to the extent is based upon a claim that the attack was engineered by Castellanos in retaliation for filing the internal complaints. The Ninth Circuit has defined the parameters of a retaliation claim:

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.[27]

The Ninth Circuit has "also noted that a plaintiff who fails to allege a chilling effect may still state a claim if he has suffered some harm."[28] Moreover, "the mere *threat* of harm can be an

---

[27] *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote and citations omitted).

[28] *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citing *Rhodes*, 408 F.3d at 568 n. 11).

adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect."[29] Nor need the threat be explicit or specific.[30]

A prisoner must also show some causal connection between the action taken by the state actor and the prisoner's protected conduct. That is, "[t]o prevail on a retaliation claim, a plaintiff must show that his protected conduct was the substantial or motivating factor behind the defendant's conduct."[31]

Pullett has pleaded the existence of an adverse action, i.e., the knife attack, and that he has was engaged in a protected First Amendment activity, i.e., the filing of grievances against Castellanos. The Court may also logically presume that the stabbing had a chilling effect on Pullett's First Amendment rights, and lacked any legitimate penological interest. What Pullett has not pleaded is a *factual* basis to establish a causal connection between the protected activity and the harm. That is, to prevail on this claim Pullett must plead and prove the existence of a conspiracy between Castellanos and the assailants.

The elements of a conspiracy are twofold: (1) an agreement or meeting of the minds to violate constitutional rights; and (2) an actual deprivation of those rights.[32] Pullett's allegations fall far short of establishing the existence of an agreement between Castellanos and the assailants. Indeed, that any such agreement can truthfully be alleged under the facts

---

[29] *Id.* at 1270.

[30] *Id.*

[31] *Id.* at 1271 (internal quotation marks and citation omitted).

[32] See *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010); *Hart v. Parks*, 450 F.3d 1059, 1069 (9th Cir. 2006) (quoting *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002)).

as presently pleaded is questionable. To accept that such a conspiracy existed would require the jury to accept that Castellanos was willing to risk a criminal prosecution simply because Pullett filed grievances against him. That a jury would reach such a conclusion is inherently implausible.

Pullett's third claim as against the Doe Defendants does not survive under an alternative theory: failure to protect. It is clearly established that the Eighth Amendment imposes a duty on prison officials to protect prisoners from harm at the hands of other prisoners.[33] It need not be shown that the prison official believed or had reason to believe that harm would actually befall the prisoner; liability may be imposed if the official failed to act despite the official's knowledge of a substantial risk of serious harm and fails to take reasonable measures to abate it.[34]

In this case, other than the potential for a conspiracy, there is no allegation, either express or necessarily implied, the Doe Defendants had any knowledge of a serious risk that Pullett would suffer any harm. That is, there is nothing in the Amended Complaint as presently drafted that indicates that the Doe Defendants had any knowledge that Pullett was in any danger of being attacked. There is no allegation that prior to the attack underlying Pullett's claim any inmate housed at CSATF had made any threat against Pullett,[35] let alone actually

---

[33] *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994).

[34] *Id.*, at 842–47; *see Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009) (applying *Farmer*).

[35] It appears from the Complaint that Pullett had concerns about an enemy while housed at Pleasant Valley State Prison. As result of these concerns, Pullett was transferred (continued...)

physically assaulted him. Pullett's claim is conclusory, based upon supposition and innuendo, not facts. It appears to be based solely upon the fact that he was the lone black amongst several Caucasians and Hispanics in the immediate vicinity.[36] In the absence of at least some evidence of racial tension between blacks and Caucasians/Hispanics resulting in the threat, if not the actual occurrence of a physical altercation, there is simply nothing upon which it could be objectively determined that Pullett was in danger of an assault.

## IV.   CONCLUSION/ORDER

Except with respect to his Third Cause of Action, Pullett cannot truthfully allege any act or acts by any Defendant violated a constitutionally protected right *and* resulted in some compensable injury.

With respect to his Third Cause of Action, in addition to the other hurdles as noted above, the absence of a named responsible official upon which service can be made may render it impossible for this matter to proceed. At this stage of the pleadings, because the Court cannot definitely state that Pullett cannot plead a viable claim for relief, Pullett will be granted leave to file a Second Amended Complaint limited to his Third Cause of Action as against J. Castellanos and the Doe Defendants.[37] Accordingly,

---

[35](...continued)
to CSATF. Nothing in either the Amended Complaint or the documents attached to it provide any indication that Pullett had an enemy at CSATF.

[36] The Court does note that it is alleged that the prison was on lock-down at the time. Pullett does not allege and nothing in the attached exhibits provides any information concerning the reason for the lockdown or its relevance to Pullett's claims.

[37]  *See Hartman v. California Dept. of Corr. and Rehab.*, 707 F.3d 1141, 1130 (9th
(continued...)

The First and Second Causes of Action in the First Amended Complaint to the extent they seek affirmative relief are **DISMISSED** without leave to amend.

The First Amended Complaint as against Defendants J. Jasso (Office Assistant) R. Hall (Appeals Coordinator), J. Cota (Appeals Coordinator), Ramos (Appeals Corcoran), P. Brightwell (Correctional Counselor) H. Homan (Correctional Counselor); J. Keuhn (Correctional Counselor), and M. Fisher (Correctional Counselor) is **DISMISSED** in its entirety without leave to amend.

The Third Cause of Action in the First Amended Complaint as against Defendant J. Castellanos (Correctional Officer) and the Doe Defendants is **DISMISSED** with leave to amend.

Pullett is granted through and including **Friday, December 11, 2015**, within which to file a Second Amended Complaint consistent with this Order and the prior Dismissal Order.[38]

***Pullett should not include copies of any documents except as necessary to establish exhaustion or as evidence of an element of his claim***.[39]

---

[37](...continued)
Cir. 2013) ("A district court may deny leave to amend when amendment would be futile."); *Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc) (explaining that leave to amend should be given unless amendment would be futile).

[38]  Docket 9.

[39]  The Court notes that Exhibits 1 – 4, inclusive, 9, 11, and 18, do not appear to be relevant to any of the issues properly before this Court. The remaining Exhibits do appear to have some relevancy to at least the exhaustion issue.

*Failure to comply with this Order within the time specified, or such additional time as the Court may grant, may result in the dismissal of this action without further notice.*

**IT IS SO ORDERED** this 28th day of October, 2015.

                                                  S/ RALPH R. BEISTLINE
                                                  UNITED STATES DISTRICT JUDGE