UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELL PULLETT,<br><br>          Plaintiff,<br><br>vs.<br><br>J. CASTELLANOS, *et al.*,<br><br>          Defendants. | Case No. 1:15-cv-00755-RRB<br><br>**ORDER DISMISSING<br>THIRD AMENDED COMPLAINT** |

Pending before the Court is the Third Amended Complaint filed by Plaintiff Dell Pullett, a California state prisoner appearing *pro se* and *in forma pauperis*, under 42 U.S.C. § 1983 against officials of the California Department of Corrections and Rehabilitation.[1] Pullett's action arises out of his incarceration at the California Substance Abuse and Treatment Facility, Corcoran ("CSATF"). Pullett is currently incarcerated at the R. J. Donovan Correctional Center, San Diego.

## I.      SCREENING REQUIREMENT

This Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.[2] The Court

---

[1]  In his Third Amended Complaint Pullet names as Defendants J. Castellanos, Correctional Officer; M. Kelm, Correctional Officer; Melero, Correctional Officer; and T. Atkins, Correctional Lt.

[2]  28 U.S.C. § 1915A(a).

set forth the standards applicable to screening in its initial Dismissal Order;[3] therefore, the Court does not repeat them herein.

## II.     PRIOR DISMISSAL ORDERS

In dismissing the First Amended Complaint the Court permitted Pullett to amend with respect to his Third Cause of Action, an Eighth Amendment claim as against a correctional officer, J. Castellanos, and the John Doe Defendants that arose out of a stabbing incident that occurred while Pullett was walking unescorted between his cell and the infirmary on May 13, 2013.[4]

Pullett's Second Amended Complaint consisted of ten paragraphs. The Court dismissed it for failure to comply with the Court's Order dismissing the First Amended Complaint.[5]

## III.    GRAVAMEN OF THIRD AMENDED COMPLAINT

Pullett's claim arises out an incident in which he was stabbed by two other inmates. Although it is somewhat difficult to follow Pullett appears to allege that in retaliation for the filing of inmate grievances that the Defendants somehow contrived to have him stabbed by other inmates.

*Castellanos*.   Pullett alleges that:   (1) Pullett observed Castellanos talking with inmate  Simas and hand him a brown paper bag; (2) Castellanos then called Pullett into the office and berated Pullet for filing grievances, essentially warning Pullett that "he was

---

[3]  Docket 9.

[4]  Docket 13, pp. 14–15.

[5]  Docket 21.

going to start searching Black inmates cells to cause trouble on the plaintiff, and that no-one write (*sic*) him up and get (*sic*) away with it";[6] and (3) immediately after Castellanos' warning inmate Simas stabbed Pullett in the neck and Simas' cellie stabbed him in the lung.[7]

*Kelm/Melero*.  Reduced to their essence, the allegations against Kelm and Melero are that they should have known that Pullett was a target for the assault but turned a "blind-eye" for their friend, Castellanos.

*Atkins*.  Pullett appears to allege that Atkins:  (1) failed to properly train and supervise his subordinates; (2) ordered the other officers to retaliate against Pullett for filing grievances, and (3) conspired with Atkins, Kelm, and Melero to have Pullet stabbed.

## IV.   DISCUSSION

Initially the Court notes that Pullett sues the Defendants in both their individual and official capacities.  The Supreme Court has held that "states or governmental entities that are considered 'arms of the State' for Eleventh Amendment" are not "persons" under § 1983.[8]  The Supreme Court also clarified that "a suit against a state official in his or her official capacity . . . . is no different from a suit against the state itself."[9]  Thus, to the extent that Pullett is suing the Defendants in their official capacities, the action must be dismissed.

---

[6]  Docket 24, p. 12, ¶ 35.

[7]  It appears from the Third Amended Complaint that both inmates were white.

[8]  *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 70 (1989).

[9]  *Id.* at 71.

The heart of Pullett's Third Amended Complaint is that the attack was engineered by Castellanos in retaliation for filing the internal complaints.  The Ninth Circuit has defined the parameters of a retaliation claim:

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.[10]

The Ninth Circuit has "also noted that a plaintiff who fails to allege a chilling effect may still state a claim if he has suffered some harm."[11]  Moreover, "the mere *threat* of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect."[12]  Nor need the threat be explicit or specific.[13]

A prisoner must also show some causal connection between the action taken by the state actor and the prisoner's protected conduct.  That is, "[t]o prevail on a retaliation claim, a plaintiff must show that his protected conduct was the substantial or motivating factor behind the defendant's conduct."[14]

Pullett has pleaded the existence of an adverse action, i.e., the knife attack, and that he has was engaged in a protected First Amendment activity, i.e., the filing of grievances

---

[10]  *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote and citations omitted).

[11]  *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citing *Rhodes*, 408 F.3d at 568 n. 11).

[12]  *Id.* at 1270.

[13]  *Id.*

[14]  *Id.* at 1271 (internal quotation marks and citation omitted).

against Castellanos.  A trier of fact might logically presume that the stabbing had a chilling effect on Pullett's First Amendment right to file grievances and lacked any legitimate penological interest.  What Pullett has not pleaded is a *factual* basis to establish a causal connection between the protected activity and the harm.

To prevail on this action Pullett must plead and prove the existence of a conspiracy between Castellanos and the assailants.  The elements of a conspiracy are twofold: (1) an agreement or meeting of the minds to violate constitutional rights; and (2) an actual deprivation of those rights.[15]  Pullett's allegations fall far short of establishing the existence of an agreement between Castellanos and the assailants or between Castellanos and the other Defendants.  Indeed, that any such agreement can truthfully be alleged under the facts as presently pleaded is not only questionable, but inherently improbable.  To accept that such a conspiracy existed would require the jury to accept that the Defendants were willing to risk a criminal prosecution simply because Pullett filed grievances against Castellanos.  That a jury would reach such a conclusion is inherently implausible.

Pullett's claim as against the Defendants does not survive under an alternative theory:  failure to protect.  It is clearly established that the Eighth Amendment imposes a duty on prison officials to protect prisoners from harm at the hands of other prisoners.[16]  It need not be shown that the prison official believed or had reason to believe that harm would actually befall the prisoner; liability may be imposed if the official failed to act despite

---

[15]  *See Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010); *Hart v. Parks*, 450 F.3d 1059, 1069 (9th Cir. 2006) (quoting *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002)).

[16]  *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994).

the official's knowledge of a substantial risk of serious harm and fails to take reasonable measures to abate it.[17]

In this case there is no allegation, express or necessarily implied, that the Defendants or any of them had any actual knowledge of a serious risk that Pullett would suffer any harm.  There is nothing in the Third Amended Complaint that indicates that any of the Defendants had any knowledge that Pullett was in any danger of being attacked. There is no allegation that prior to the attack underlying Pullett's claim any inmate housed at CSATF had even made any threat against Pullett,[18] let alone actually physically assaulted him.  Pullett's claim is conclusory, based upon supposition and innuendo, not facts.[19]  It appears to be based solely upon the fact that he was the lone black amongst several Caucasians and Hispanics in the immediate vicinity.[20]  In the absence of at least some evidence of tension between blacks and Caucasians and Hispanics resulting in at least the threat, if not the actual occurrence, of a physical altercation, there is simply

---

[17]  *Id.*, at 842–47;  *see Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009) (applying *Farmer*).

[18]  It appeared from the Complaint that Pullett had concerns about an enemy while housed at Pleasant Valley State Prison.  As result of these concerns, Pullett was transferred to CSATF.  Nothing in either the Amended Complaint or the documents attached to it provide any indication that Pullett had an enemy at CSATF.

[19]  This is particularly true as to Kelm and Melero, the allegations against which simply state  that they "knew or should have known that plaintiff was a target to get assaulted by inmates."  Docket 24, p. 13, ¶ 39 (Kelm) and p. 14, ¶ 41 (Melero).

[20]  The Court does note that it is alleged that the prison was on lock-down at the time.  Pullett has not alleged and nothing in the Third Amended Complaint provides any information concerning the reason for the lockdown or its relevance to Pullett's claims. Moreover, when on lock-down status inmates are usually confined to their cells, not as is alleged in this case freely roaming the prison corridors and the day room.

nothing upon which it could be objectively determined that Pullett was in danger of an assault.

## V.     CONCLUSION/ORDER

The Third Amended Complaint does not allege sufficient facts upon which the Court may grant relief as against any Defendant.  "[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is particularly broad."[21] The Court has already given Pullett three opportunities to amend his Complaint.  It is apparent that Pullett cannot truthfully plead a plausible cause of action against the Defendants or any of them; thus, any further amendment would be futile.[22]

Therefore, the Third Amended Complaint is **DISMISSED** in its entirety without leave to amend.

This Court, having fully considered the matter finds that reasonable jurists could not disagree with this Court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. Accordingly, any appeal would be frivolous or taken in bad faith.[23]  Plaintiff's *in forma pauperis* status is hereby **REVOKED**.

---

[21] *See Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (citation and internal quotation marks omitted).

[22] *See Hartman v. California Dept. of Corr. and Rehab.*, 707 F.3d 1141, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile."); *Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc) (explaining that leave to amend should be given unless amendment would be futile).

[23] 28 U.S.C. § 1915(a)(3); *see Hooker v. American Airlines*, 302 F.3d 1091, 1092 (9th Cir. 2002).

The Clerk of the Court is directed to enter judgment of dismissal, with prejudice, which states that the dismissal counts as a "strike" under 42 U.S.C. § 1915(g).

**IT IS SO ORDERED** this 16th day of June, 2016.

S/ RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE